**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 27 2013, 7:06 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CYNTHIA M. CARTER**
Law Offices of Cynthia M. Carter, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

RON ROSE,                              )
                                       )
    Appellant-Defendant,               )
                                       )
        vs.                )      No. 15A01-1306-PC-272
                                       )
STATE OF INDIANA,                      )
                                       )
    Appellee-Plaintiff.                )

APPEAL FROM THE DEARBORN SUPERIOR COURT
The Honorable Sally Blankenship, Judge
Cause No. 15D02-1303-PC-1

**December 27, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Ron Rose appeals the denial of his petition for post-conviction relief (PCR) following his conviction under Ind. Code Ann. § 35-42-4-2(a)(3) (West, Westlaw current with all 2013 legislation) for criminal deviate conduct as a class B felony, which was entered upon his guilty plea. Rose presents several issues for review, one of which is dispositive: was Rose's guilty plea knowing, intelligent, and voluntary?

We reverse.

The facts are that on March 11, 2011, Rose pleaded guilty to criminal deviate conduct as a class B felony. Rose thereby admitted that between February 3, 2010 and February 15, 2010, he knowingly caused T.S. to perform or submit to deviate sexual conduct when T.S. was so mentally disabled or deficient that consent to the conduct could not be given. The written plea agreement (the Agreement) called for a sentence of twenty years, with ten years suspended. Among other things, the Agreement provided: "Defendant shall register as a sexual offender as required by law." *Appellant's Appendix* at 38. The Agreement was approved by the trial court on April 12, 2011.

The Agreement incorporated by reference two attachments, designated as Exhibit A and Exhibit B. At the guilty plea hearing, those attachments were submitted for the court's approval, along with the Agreement. Exhibit A was descriptively entitled "Dearborn County Superior Court's Conditions of Probation". *Id.* at 40. Exhibit B, which is the primary focus in the present appeal, was entitled "Indiana Recommended Special Probation Conditions for

Adult Sex Offenders". Exhibit B consisted of twenty-five[1] numbered conditions, each with two blank spaces beside it. The first blank space was provided for Rose to signify by initialing that he acknowledged it as a condition of his probation. The second blank space was used by the court to signify by initialing that it imposed that particular condition as a part of Rose's probation. Rose and the court initialed all but two of those twenty-five conditions. The un-initialed conditions provided as follows:

> 1.    ***Applies only to sexually violent predators:***  A sex offender who is a sexually violent predator (as defined in IC 35-38-1-7.5) shall register with local law enforcement authorities within seventy-two (72) hours of being released to probation in accordance with IC 11-8-8-7(h) and shall comply with all other registration requirements. **Required as a condition of probation by I.C. § 35-38-to-2.2 for sex offenses listed in I.C. § 11-8-8-4.5.**

> \* \* \* \* \*

> 3.    ***Applies only to "offenders against children" as defined in I.C. § 35-42-4-11(a)(1) & (2), including sexually violent predators.***  You shall not reside within 1000 (1000) feet of school property, a used program center or a public park and you shall not establish a residence within one (1) mile of the victim of your sex offense in accordance with IC 35-42-4-11 (c).

*Id.* at 41 (emphasis in original). Notably, Rose and the court both initialed paragraph 2, which provided as follows:

> 2.    ***Applies only to sex offenders who are NOT sexually violent predators:*** You shall register with local law enforcement authorities as a sex offender within seven (7) days of being released to/placed on probation in accordance with IC 11-8-8-7 and shall comply with all other registration requirements. **\*Required as a condition of probation by I.C. § 35-30-2-2.2 for sex offenses listed in IC 11-8-8-4.5.**

---

[1] The list also included numbered paragraph 26. Other than the number, this item was left blank. Presumably, this space was intended to list a nonstandard, handwritten condition. Of course, the spaces provided for initials corresponding to this "item" were left blank.

3

*Id.* (emphasis in original).

At the guilty plea hearing, Rose acknowledged that he had read, fully understood, and signed Exhibit A. Referring to Exhibit B, the court indicated that it would "actually review" the conditions set out therein with Rose "because they are very important that they are your agreement and understanding" [sic]. *Id.* at 46-47. The court then proceeded to review, point by point but omitting paragraphs 1 and 3, the numerous conditions set out on that list. Rose acknowledged those conditions, and accepted the guilty plea. According to Rose, when he was processing into prison shortly thereafter, he learned for the first time that he had been classified as a sexually violent predator (SVP), not as a regular sex offender.

Rose acknowledges that he agreed to register as a sex offender. He claims, however, that his plea was based upon the understanding that he would be required to register as a regular sex offender, not an SVP. As a regular sex offender, he would not be subjected to the lifetime registration requirement under Ind. Code Ann. § 11-11-8-7 (West, Westlaw current with all 2013 legislation). As an SVP, on the other hand, he would be required to register for the rest of his life, as well as to endure other burdens not attendant to regular sex-offender status, such as restrictions placed upon certain activities and other restrictions concerning where he may reside. Rose challenges the validity of his guilty plea on the basis that it was not voluntary. He brings this challenge in two forms, including a claim of trial court error and a claim of ineffective assistance of counsel in failing to advise him of the consequences of his plea. The first claim is dispositive of this appeal.

In a post-conviction proceeding, the petitioner bears the burden of establishing

grounds for relief by a preponderance of the evidence. *Bethea v. State*, 983 N.E.2d 1134 (Ind. 2013). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* at 1138 (quoting *Fisher v. State,* 810 N.E.2d 674, 679 (Ind. 2004)). In order to prevail, the petitioner must demonstrate that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the post-conviction court's conclusion. *Bethea v. State*, 983 N.E.2d 1134. Although we do not defer to a post-conviction court's legal conclusions, we will reverse its findings and judgment only upon a showing of clear error, i.e., "that which leaves us with a definite and firm conviction that a mistake has been made." *Id*. at 1138 (quoting *Ben–Yisrayl v. State,* 729 N.E.2d 102, 106 (Ind. 2000), *cert. denied*, 534 U.S. 830 (2001)).

"The long-standing test for the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Diaz v. State*, 934 N.E.2d 1089, 1094 (Ind. 2010) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)). To succeed on a claim of this nature, a petitioner "needs to plead specific facts from which a finder of fact could conclude by a preponderance of the evidence that the trial judge's failure to make a full inquiry in accordance with [Ind. Code Ann. § 35-35-1-2(a) (West, Westlaw current with all 2013 legislation)] rendered his decision involuntary or unintelligent." *Oliver v. State*, 843 N.E.2d 581, 590 (Ind. Ct. App. 2006). I.C. § 35-35-1-2(a) provides that before a court can accept a guilty plea, it must determine that the defendant: (1) understands the nature of the charges; (2) has been informed that a guilty plea represents a waiver of several specific constitutional rights; and (3) has been apprised of the

maximum and minimum sentences for the crime charged. *See also Diaz v. State*, 934 N.E.2d 1089. When making this assessment, we review all of the evidence before the post-conviction court, "including testimony given at the post-conviction trial, the transcript of the petitioner's original sentencing, and any plea agreements or other exhibits which are part of the record." *Id*. at 1094 (quoting *State v. Moore,* 678 N.E.2d 1258, 1266 (Ind. 1997), *cert. denied*, 523 U.S. 1258 (1998)).

I.C. § 35-35-1-2(a) reflects that an understanding of the maximum and minimum sentences that may be assessed for the crime charged is an essential factor in making an informed judgment regarding whether to enter a guilty plea. We conclude that the same is true with respect to the plea of guilty to an offense that confers SVP status upon a defendant, along with the stigma and restrictions of freedom attendant to that status. That is, in pleading guilty to an offense that confers this status, a trial court must ensure that the defendant understands this and its ramifications. This is based upon a defendant's due process right to be sheltered from the consequences of a guilty plea entered on anything less than an informed judgment. *See id.* (Ind. 2010) (quoting *North Carolina v. Alford,* 400 U.S. at 31) (whether a guilty plea is valid depends upon "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant'").

Rose's trial counsel, Dory Maryan,[2] testified at length at the post-conviction hearing about her representation of Rose. She testified that when she communicated the State's plea offer to Rose, "there were multiple concerns" on Rose's part. *Transcript of Post Conviction*

---

[2] At the time of trial, counsel's surname was Hertzel.

*Relief Hearing* at 20. One concern was the amount of time he would be incarcerated. The second concern "was the sex offender registry and what impact that would have on his ability to see his kids." *Id.* at 21. She advised Rose of the implications of accepting the State's offer, including the imposition of a lifetime registration requirement. She told him that a conviction under the statute to which he was pleading guilty would automatically confer SVP status upon him.[3] She also discussed the implications of SVP classification, including the fact that "there [were] all sorts of restrictions with movement" and that lifetime registration was a condition of probation specified in the State's tendered agreement. She noted that Rose refused to initial the paragraphs pertaining specifically to SVP status, which she advised him could "cause the Court to have a problem with accepting his plea [.]" *Id.* at 23. She also advised that if he was not willing to accept (and therefore initial) those conditions, "the Judge would let him know if the Court had a problem with it, with him not signing it and … [t]he Court would advise him accordingly what that meant or would inquire further." *Id.* She testified that she "[a]bsolutely" advised him that the offense to which he was pleading guilty required him to register as a sex offender for life. *Id.* at 25.

It is clear from the foregoing that Rose did not wish to plead guilty to a crime that would confer SVP status upon him. His attorney emphatically corroborated his claim in this respect. It is also clear that it was not possible to plead guilty in the present case without thereby obtaining SVP status by operation of law. Trial counsel's testimony indicated this

---

[3] Pursuant to Ind. Code Ann. § 35-38-1-7.5(b)(1)(B) (West, Westlaw current with all 2013 legislation), a person attains SVP status by operation of law if convicted of an offense under I.C. § 35-42-4-2.

(i.e., voiding SVP status) was at the forefront of Rose's mind when they discussed his refusal to initial paragraphs 1 and 3 on Exhibit B. Yet, Rose apparently believed that if he declined to initial those two provisions, they would be excluded from the Agreement, and that if the trial court approved the Agreement as such, he would instead be classified as a regular sex offender pursuant to paragraph 2. Accordingly, the evidence supports Rose's claim that he did not agree to plead guilty to the present offense if it conferred upon him SVP status.

At the guilty plea hearing, the court did not mention the two provisions that Rose failed to initial. Instead, the court gave him the standard advisements that attend guilty pleas, including acknowledgment of the rights he was waiving as a result of his guilty plea. The court mentioned Exhibit A, which it described as "the standard conditions of probation that you signed", and verified that Rose had read and fully understood that document. *Id.* at 6. The court then discussed Exhibit B, paraphrasing its provisions as set out above, omitting paragraphs 1 and 3. The only mention of "sexually violent predator" were the Court's generic advisements that it could not approve requests for waiver of restrictions placed upon sexually violent predators with respect to the location of the offender's residence and person. Following these advisements, the court asked, "and is that your understanding of the conditions of Exhibit B that you would be required to abide by during your probation?" *Id.* at 12. Rose responded, "Yes." *Id.*

We pause at this point to note the State's claim that Rose was trying to "game the system" by seeking to avoid SVP status, all the while "knowing from his counsel's advice that the law required lifetime registration[.]" *Appellee's Brief* and 6. This assertion begs the

8

question. Whether Rose knew that a conviction of this offense would inexorably confer SVP status upon him is precisely the question upon which this appeal hinges. By all accounts, counsel persistently tried to explain to Rose the ramifications of pleading guilty to an offense under I.C. § 35-42-4-2(a)(3). Yet, it appears that Rose clung to the belief that he could both plead guilty to this offense *and* avoid SVP status. It would seem that, at some point, counsel gave up and decided to let the court explain to Rose that what he wanted was not possible. Yet, the trial court's comments during the hearing that followed would not have apprised Rose that the plea agreement accepted by the court was inconsistent with Rose's understanding. Significantly, the court made no note of Rose's failure to initial paragraphs 1 and 3 on Exhibit B, nor did get it read those paragraphs to Rose.

Thus, it appears that the trial court entered judgment of conviction upon a plea agreement that contained a term – and a significant term at that – to which Rose not only did not agree, but in fact specifically rejected when discussing it with his attorney beforehand. The trial court's comments at the guilty plea hearing were not of such a nature as to shake Rose's apparent belief that his refusal to initial paragraphs 1 and 3 shielded him from SVP status. Under the present circumstances, the trial court or the State, or both, should have questioned Rose about his refusal to initial these paragraphs. By accepting the terms of the Agreement, including the un-initialed Exhibit B, the trial court's action could reasonably be interpreted by Rose as giving him what he wanted. Thus, Rose has demonstrated that, prior to accepting his guilty plea, the trial court failed to ascertain that he understood the range of punishments that he faced as a result of pleading guilty. *See* I.C. § 35–35–1–2(A)(3).

Rose has demonstrated by a preponderance of the evidence that he did not understand a critical aspect of his guilty plea.  Therefore, the post-conviction court clearly erred in denying his PCR petition.  That decision is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Judgment reversed.

KIRSCH, J., and BAILEY, J., concur.