


FILED

Sep 20 2024, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Commitment of G.W.,

*Appellant-Respondent,*

v.

Madison State Hospital,

*Appellee-Petitioner.*

September 20, 2024

Court of Appeals Case No.
23A-MH-2452

Appeal from the
Marion Superior Court

The Honorable
David Certo, Judge

Trial Court Cause No.
49D08-2303-MH-12196

**Robb, Senior Judge.**

## Statement of the Case

[1]  G.W. is a deaf person who has been diagnosed with several medical conditions, including mental illness.  He appeals the trial court's order of regular commitment, directing that he remain at the Madison State Hospital ("Hospital") for at least ninety days.  It appears that G.W. is still at the Hospital,[1] and in any event the Hospital does not claim this appeal is moot.

[2]  G.W. challenges the trial court's decision to hold an evidentiary hearing via video conference.  He also challenges the appropriateness of his placement at the Hospital.  We conclude the trial court did not commit reversible error in holding the hearing via video conference, but the Hospital failed to show its facility is the appropriate place for G.W.  We affirm in part, reverse in part, and remand with instructions.

---

[1] On June 4, 2024, G.W. filed a status report to inform the Court he is still hospitalized.  The Hospital has moved to strike the status report and other items from the record.  We grant the Hospital's motion by separate order.

## Facts and Procedural History

[3] G.W. was fifty-eight years old during the time relevant to this appeal. The record tells us little about G.W.'s medical history or diagnoses before his current involuntary commitment, except that he was taking medication for mental illness. He had lived in a group home for deaf persons and worked in a restaurant. The group home closed due to lack of funding. G.W. moved to an apartment complex near other deaf people, but he could not afford to continue living there. He decompensated due to not taking his medication and losing access to his deaf community, and he ended up in a homeless shelter.

[4] This case began on March 24, 2023, when the Community Health Network ("the Network") filed a report on emergency detention regarding G.W. On March 27, the trial court committed G.W. to the Network's care for up to ninety days because he was "mentally ill and gravely disabled." Appellant's App. Vol. II, p. 9.

[5] On May 11, 2023, G.W. was transferred to the Hospital's facility in Madison, Indiana under circumstances not explained in the record. On June 6, the Hospital filed a "Report Requesting Extension of Temporary Commitment and Physician's Statement." *Id.* at 10. The trial court held a hearing by video conference and concluded G.W. "is suffering from Psychosis, unspecified, Mood Disorder, unspecified, PTSD, Generalized Anxiety Disorder, Personality Disorder, unspecified[.]" *Id.* at 48. The court further determined G.W. was

gravely disabled. As a result, the court ordered G.W. to remain at the Hospital for no more than ninety days.

[6] On August 30, 2023, the Hospital filed a Report Requesting Regular Commitment, alleging G.W. needed inpatient treatment for longer than ninety days. The Hospital provided a statement from G.W.'s psychiatrist, Dr. Jill Zinner. Dr. Zinner discussed G.W.'s condition and further stated, "A courtroom hearing will have a harmful effect on the Respondent's health or well-being. It is recommended that the hearing be held at the [Hospital] or other suitable place[.]" *Id.* at 19.

[7] On September 11, 2023, the trial court issued an order scheduling an evidentiary hearing for September 18, to be held "over video." *Id.* at 20. The order cited Dr. Zinner's statement.

[8] On September 14, the Hospital moved to appear via telephonic or video technology. At a minimum, the Hospital asked that its witnesses and counsel be allowed to appear remotely rather than being required to travel to Marion County. On the same day, G.W. filed an objection to holding the hearing via video conference and asked the court to arrange for him to be transported to Marion County for an in-person hearing. He argued that as a deaf person, an in-person hearing would better meet his needs and satisfy the requirements of "due process[.]" *Id.* at 28.

[9] The evidentiary hearing was held as scheduled via video conference on September 18. A team of interpreters was present. Two of them were "ASL,"

or American Sign Language, interpreters, and two others were "CVI" (perhaps a mistype of CDI, meaning Certified Deaf Interpreter). Tr. Vol. 2, p. 4. One of the interpreters explained it was her first time working in this setting. Another interpreter expressed concerns that G.W. may not have visual access to her and may not understand the proceedings.

[10] The trial court arranged to place the interpreters, G.W., and his counsel in a private virtual room so they could discuss how to proceed. Before the private conference began, the court advised G.W. that if he intended to "pursue the objection" to a virtual hearing, the case "should" be transferred to Jefferson County. *Id.* at 5.

[11] After the conference, the interpreters explained to the court they had worked out a process to interpret for G.W. Next, G.W., by counsel, stated he did not want to transfer the case to Jefferson County and establish a new attorney-client relationship with only four days left in his term of commitment. He preferred "to go forward today." *Id.* at 8. But G.W. noted it would be "cumbersome and fatiguing" for the interpreters and G.W. to participate in a two-to-three-hour hearing. *Id.* at 9. He asked the court to break the hearing down into shorter sessions over the next three days. The court denied G.W.'s proposal as "unworkable" and proceeded. *Id.* We address the evidence presented at the hearing in the discussion section of this opinion. During the hearing, a member of the interpreter team had to leave and was replaced by another interpreter.

After the hearing, the trial court issued an order stating G.W. is mentally ill and gravely disabled. In particular, the court noted G.W.'s "judgment and reasoning" are suspect, as shown by his paranoid belief that Hospital staff "may attack him." Appellant's App. Vol. II, p. 15. The court directed that he remain at the Hospital for at least ninety days. This appeal followed.[2]

## Discussion and Decision

### I. Holding Evidentiary Hearing by Video Conference

G.W. argues the trial court violated Indiana's administrative rules, as well as his constitutional rights to due process and due course of law, by holding the evidentiary hearing remotely rather than in person. He first cites Indiana Administrative Rule 14(C) (effective January 1, 2023):

> A court must conduct all testimonial proceedings in person except that a court may conduct the proceedings remotely for all or some of the case participants for good cause shown or by agreement of the parties. Remote proceedings must comply with constitutional and statutory guarantees.

Commentary to the rule provides: "Presenting live testimony in court remains of utmost importance." *Id.* And our Supreme Court has stated: "in-person evidentiary hearings are vital in certain proceedings, such as involuntary civil commitment hearings, where a party's liberty interests are at stake." *B.N. v.*

---

[2] We held oral argument on July 31, 2024 at the State House in Indianapolis. We thank the parties for their excellent presentations.

*Health & Hosp. Corp.*, 199 N.E.3d 360, 365 (Ind 2022). We apply de novo review to "question[s] of the scope and applicability of Indiana Administrative Rule 14[.]" *C.S. v. State*, 131 N.E.3d 592, 595 (Ind. 2019). But we review a trial court's good-cause determination for an abuse of discretion. *B.N.*, 199 N.E.3d at 363.

[15] G.W. claims his agreement to go forward with the virtual hearing was invalid because the trial court forced him to choose between having a virtual hearing with his current counsel, with all the difficulties a virtual hearing potentially posed for him as a deaf person, or possibly having an in-person hearing via a Jefferson County court, with new counsel. He characterizes the trial court's offer as a "Hobson's choice." Appellant's Br. p. 21.

[16] Administrative Rule 14(C) emphasizes that in-person hearings should be the norm rather than the exception. Further, in his objection to a remote hearing, G.W. explained why an in-person hearing would have better met his needs as a deaf person. But the court's choice of language at the beginning of the evidentiary hearing, that the case "should" be transferred to Jefferson County for an in-person hearing, would have given a reasonable person the impression that the court would not agree to an in-person hearing. G.W. understandably concluded he could not have an in-person hearing without a change of venue and a new attorney appointed by the new trial court. Considering all of the circumstances, it does not appear G.W. knowingly or voluntarily consented to hold the evidentiary hearing via video conference.

[17] Even so, Administrative Rule 14(C) authorized the trial court to hold the hearing via video conference, over G.W.'s objection, if the trial court determined there was good cause. A finding of good cause under Rule 14 requires a showing of "particularized and specific factual support." *B.N.*, 199 N.E.3d at 364. There must be "something specific to the moment, the case, the court, the parties, the subject matter, or other relevant considerations." *Id.* at 364-65.

[18] Dr. Zinner, who was G.W.'s treating psychiatrist, told the court, "A courtroom hearing will have a harmful effect on the Respondent's health or well-being." Appellant's App. Vol. II, p. 19. The trial court cited Dr. Zinner's statement when scheduling the video conference hearing. This evidence is sufficiently specific to the case to have supported a finding of good cause. Because the record would have supported a finding of good cause, we cannot conclude G.W.'s invalid consent provides grounds for reversal. *See B.N.*, 199 N.E.3d at 365-66 (trial court did not commit reversible error by holding involuntary commitment hearing remotely despite no individualized finding of good cause; any error was harmless).

[19] G.W. next argues that holding the hearing remotely violated his rights to due process under the Fourteenth Amendment and to due course of law under the

Indiana Constitution.[3]  "Civil commitment proceedings have two purposes – to protect both the public and the rights of the person for whom involuntary commitment is sought."  *Matter of Commitment of C.D.*, 206 N.E.3d 392, 394 (Ind. Ct. App. 2023).  "The liberty interest at stake in a civil-commitment proceeding goes beyond a loss of one's physical freedom because commitment is accompanied by serious stigma and adverse social consequences."  *Id*.  "Accordingly, proceedings for civil commitment are subject to the requirements of the Due Process Clause."  *Id*.  A judgment rendered in violation of the Due Process Clause is void.  *B.A. v. State*, 219 N.E.3d 134, 138-39 (Ind. Ct. App. 2023).  "We review whether a judgment is void or valid de novo."  *Id.* at 139.  "In the context of a procedural right to remedy by due course of law in a civil proceeding, . . . the Indiana Constitution has developed a body of law essentially identical to federal due process doctrine."  *McIntosh v. Melroe Co.*, 729 N.E.2d 972, 976 (Ind. 2000) (internal quotation omitted).

[20]  According to G.W., failing to conduct the evidentiary hearing in person violated his right to due process because:  (1) the interpreters had to develop an ad hoc interpretation process "on the fly" (Appellant's Br. p. 30); (2) one interpreter was replaced during the hearing; and (3) the interpreters could not confirm G.W. understood them.  G.W. claims he was, in effect, involuntarily

---

[3] The Hospital argues G.W. waived these claims by failing to present them to the trial court.  We disagree, based on our review of the record.  The Hospital further claims G.W. invited any error as to his rights by agreeing to hold the hearing via video conference.  As noted above, we are unconvinced G.W. voluntarily decided to drop his objection to an in-person hearing.

absent from his own hearing. The Hospital argues the trial court's management of the hearing met due process requirements because G.W. understood what was happening.

[21] We find guidance in *Diaz v. State*, 934 N.E.2d 1089 (Ind. 2010). In that case, a petitioner for post-conviction relief claimed his guilty plea was not knowing and voluntary. In particular, Diaz argued Spanish was his native language, and the English language translator did such a poor job that he did not understand the proceedings. Diaz presented evidence that the translator mistranslated the proceedings. The Supreme Court stated that court proceedings must be simultaneously translated to allow a defendant to effectively participate in the hearing. *Id*. at 1095. The Court further concluded the record did not demonstrate whether Diaz was provided with accurate interpreting and, as a result, he may not have understood the proceedings. Remand was necessary to resolve the issue.

[22] In G.W.'s case, the facts lead to a different outcome. After some uncertainty at the beginning of the evidentiary hearing, the four-person interpretive team established an interpretive process for G.W. Then, during G.W.'s counsel's discussion with the trial court, an interpreter briefly interrupted to ensure G.W.'s screen was pinned to view the person who was signing to him. Just before the parties began to present evidence, G.W.'s counsel invited the interpreters or G.W. to speak up if they did not understand the proceedings. None of them subsequently expressed difficulty understanding the evidence. To the contrary, during the Hospital's presentation of evidence, G.W.

attempted to interject several times to disagree with or respond to witnesses' statements. And at the beginning of his testimony, G.W. stated he had understood what the Hospital's witnesses had said. One of the interpreters was replaced during the hearing, but there is no evidence that the replacement affected G.W.'s understanding of the proceedings.

G.W. points out that he held his face close to his computer screen throughout the hearing. But the evidence demonstrates that he understood what was being said. In sum, we cannot conclude the record shows G.W.'s rights to due process and due course of law were violated by the way the trial court conducted the video conference. *See S.E. v. Ind. Dep't. of Child Servs.*, 15 N.E.3d 37, 44 (Ind. Ct. App. 2014) (notwithstanding waiver, no due process violation in requiring deaf person to testify via interpreter; there was no evidence of interpreter mistakes or that witness had trouble explaining herself), *trans. denied*.

## 2. Involuntary Commitment – Choice of Placement

G.W. argues the trial court should not have authorized his continued placement at the Hospital. A petitioner seeking to have a person involuntarily committed must "prove by clear and convincing evidence that . . . the individual is mentally ill and either dangerous or gravely disabled; and . . . detention or commitment of that individual is appropriate." Ind. Code § 12-26-2-5(e) (2007). Clear and convincing evidence is "an intermediate standard of proof greater than a preponderance of the evidence and less than proof beyond a reasonable doubt." *T.D. v. Eskenazi Health Midtown Cmty. Mental Health Ctr.*, 40 N.E.3d 507, 510 (Ind. Ct. App. 2015). A court may order that a person needing

commitment should be placed "in an appropriate facility . . . [or] an outpatient therapy program[.]"  Ind. Code § 12-26-7-5(a) (2018).

[25] When reviewing a trial court's order of commitment, we look only to the evidence most favorable to the judgment and all reasonable inferences drawn therefrom.  *E.F. v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 194 N.E.3d 1130, 1135 (Ind. Ct. App. 2022).  We will affirm if, after considering the probative evidence and reasonable inferences supporting the decision, a reasonable trier of fact could have found the necessary elements proven by clear and convincing evidence.  *Matter of B.N.*, 137 N.E.3d 330, 336 (Ind. Ct. App. 2019).  "The determination of whether an involuntary commitment is appropriate is fact-sensitive."  *R.P. v. Optional Behav. MHS*, 26 N.E.3d 1032, 1037 (Ind. Ct. App. 2015).

[26] G.W. does not appear to dispute the trial court's determination that he is mentally ill and gravely disabled.  Instead, he claims the record shows being placed at the Hospital was not appropriate because the employees could not accommodate his deafness, thereby exacerbating rather than addressing his mental health challenges.

[27] Dr. Zinner attributed G.W.'s original need for hospitalization to both isolation from his deaf community and failure to take medications for his mental illnesses.  She also acknowledged that G.W.'s separation from the deaf community can profoundly and negatively impact his mental health.  At oral argument, the Hospital conceded G.W.'s needs must be considered

"holistically," Oral Arg. at 42:36, and his deafness "does inform the discussion," *id.* at 40:07.

[28] Despite this undisputed showing that G.W.'s deafness is an essential component of his mental health challenges, the Hospital presented no evidence to show how it would accommodate his disability as part of his treatment. To the contrary, the Hospital does not have deaf personnel or interpreters on staff, and during the time relevant here, had only one other deaf patient. That patient was often unavailable due to unspecified challenges. Aspire, a State of Indiana-supported group that assists deaf and hard of hearing individuals, meets with G.W. virtually, only once a week, to provide "an outlet for communicating in [sign language]." Tr. Vol. 2, p. 41. There is no evidence showing that this once-a-week virtual meeting is sufficient to keep G.W. connected to the deaf community. In the absence of such evidence, it appears G.W. continues to be isolated from the deaf community at the Hospital.

[29] In addition, G.W.'s caseworker, Molly Williamson, works with patients in group sessions addressing a variety of topics. But the Hospital does not provide G.W. with interpreter services for those sessions. Instead, she gives G.W. handouts or videos with subtitles. Williamson could not say whether G.W. benefitted from the group sessions without an interpreter, noting only that she "assume[d]" there was a positive effect because he seemed to be doing better overall. *Id.* at 20.

Further, when Williamson meets with G.W. one-on-one, she does not use an interpreter unless he needs to review "mail or other legal papers." *Id.* at 14. For all other meetings, he has to communicate using a whiteboard. Aspire virtually attends G.W.'s treatment team meetings, where his case is discussed, but Dr. Zinner generally uses only online interpreters when treating G.W. The Hospital does not point to any evidence that it considered whether in-person interpretive services would be better for his treatment.

Based on this evidence, we conclude the Hospital failed to prove by clear and convincing evidence that its facility is an appropriate place for G.W. G.W. appears to need in-patient treatment, but there is no evidence the Hospital considered whether its facility can provide reasonable accommodations for his deafness that will work best for his treatment. *See Civil Commitment of W.S. v. Eskenazi Health et al.*, 23 N.E.3d 29, 36 (Ind. Ct. App. 2014) (reversing civil commitment order on question of forced medication; petitioner presented no evidence that it considered other treatments and considered medication to be least restrictive treatment), *trans. denied.*

We do not hold that the Hospital, or any other in-patient facility, is inherently inappropriate for G.W. But here, the Hospital failed to meet its burden of proof.

## Conclusion

[33] For the reasons stated above, we affirm in part, reverse in part, and remand with instructions to hold a new evidentiary hearing to address the appropriate placement for G.W.

[34] Affirmed in part, reversed in part, and remanded.

Bailey, J., and Weissmann, J., concur.

ATTORNEYS FOR APPELLANT

Talisha R. Griffin
Casey Farrington
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Evan M. Comer
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA DISABILITY RIGHTS

Thomas E. Crishon
Samuel M. Adams
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
NATIONAL ASSOCIATION OF THE DEAF

Christopher Taylor-Price
Taylor-Price Law, LLC
Indianapolis, Indiana

Drake Darrah
Silver Spring, Maryland