DAVID, Justice.
Larry D. Russell, Jr. pleaded guilty to five counts of class C felony neglect of a dependent and two counts of class C felony criminal confinement. The plea agreement left sentencing to the discretion of the trial court but capped Russell’s sentence at ten years “pursuant to Indiana Code 35-50-l-2(c).” (App. at 89.) This Section, however, did not actually apply to Russell. Nevertheless, the trial court accepted the plea agreement and sentenced Russell to ten years in accordance with the perceived statutory cap. When Russell appealed his aggregate sentence, the Court of Appeals sua sponte determined that the misapplication of Indiana Code § ■ 35—50—1—2(c) rendered the plea agreement void as a matter of law.
Russell petitioned this Court for transfer, and both Russell and the State argue that our precedent compels us to uphold the plea agreement. Upon review, it is clear that the ten-year cap in Russell’s plea agreement and the trial court’s imposition of a ten-year sentence were based on an erroneous application of Indiana Code § 35—50—1—2(c). Despite this mistake of law, we hold that Russell’s plea agreement is enforceable, because where a defendant like Russell pleads guilty knowingly, intentionally, and voluntarily, and where a defendant like Russell gets the benefit of the bargain with the State when the State errs, “there is no compeling reason to set aside the conviction on grounds that the sentence is later determined to be invalid.” Lee v. State, 816 N.E.2d 35, 39 (Ind.2004).
Facts and Procedural History
The State charged Russell with five counts of class C felony neglect of a dependent, two counts of class C felony criminal confinement, three counts of class D felony criminal confinement, and class D felony neglect of a dependent. But the charges only begin to reflect the extreme abuse and neglect Russell inflicted over a three-month period upon three teenaged boys— P.G., B.J., and T.D.—he and his wife adopted. Russell padlocked the boys in one bedroom, where they suffered long periods without food, water, or bathroom access. With the help of his wife, Russell poured the boys’ own urine over their heads, rubbed Icy Hot on one boy’s genitals and rectum, duct taped diapers to the boys, tied the boys to their beds with duct tape and rope, placed rolled socks in the boys’ mouth secured by duct tape, and water boarded the boys. At one point, one of the boys burrowed through the walls and ceiling in order to reach the kitchen for food. And when seventeen-year-old P.G. escaped to a local hospital, by freeing himself from the rope and duct tape Russell used to confine him to his bed and prying off plywood nailed to the window, he weighed only eighty-two pounds.
On September 22, 2013, Russell pleaded guilty to five counts of class C felony neglect of a dependent[1] (counts 1-5) and two counts of class C felony criminal confinement resulting in bodily injury[2] (counts 9-10); in exchange, the State dismissed the remaining counts.[3] The plea agreement *1225 left sentencing to the discretion of the trial court but capped Russell’s sentence at ten years “pursuant to Indiana Code 35-50-1-2(c).” (App. at 89.) This Section provides in relevant part that:
[Ejxcept for crimes of violence,[4] the total of the consecutive terms of imprisonment ... to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.
(Emphasis added.)
Ten years is the advisory sentence for a class B felony (one class of felony higher than class C felony neglect of a dependent) and thus apparently the source of the ten-year sentencing cap in Russell’s plea agreement, as the following colloquy, at Russell’s sentencing hearing demonstrates:
Court: Mr. Russell, there is no agreement as to sentencing, you’re aware of that?
Russell: Yes, Your Honor.
Court: There is a provision however, in the statutes which requires that any imposition of a sentence that would include consecutive terms, could not exceed the advisory sentence for the B Felony, which is the next highest charge, which is ten (10) years. Did you talk to your attorney about that?
Russell: Yes sir.
Court: In other words by statute in this case, the maximum sentence you can get is ten (10) years.
Russell: Yes, Your Honor.
Court: And there is no other agreement as to the sentence, you’re aware of it?
Russell: Yes, Your Honor.
Court: In other words you are asking this court to take your plea today, and sentence you, and you could be facing up to ten (10) years in the DOC. Are you prepared to go forward based on that understanding?
Russell: Yes, Your Honor.
(Tr. at 7-8.) All parties seemed to agree that pursuant to statute the trial court could not sentence Russell to more than ten years in prison.[5]
The trial court accepted the plea agreement and sentenced Russell as follows:
Each of the victims deserves justice. The court finds the following to be an appropriate sentence. On each of Counts 1, 4 and 9 involving P.G., the defendant is sentenced to the Department of Correction for eight (8) years, concurrent with one another. On each of Counts 2, 5 and 10, involving B.J., the defendant is sentenced to the Department of Correction for eight (8) years, concurrent with each other, but consecutive to Counts 1, 4 and 9. On Count 3, involving T.D., the defendant is sentenced to the Department of Correction for eight (8) years, consecutive to Counts 1, 4 and 9 and Counts 2, 5 and 10. However, pursuant to the limitation imposed by I.C. § S5-50-1-2, defendant’s aggregate, consecutive sentence is limited to ten (10) years....
(Appellant’s App. at 97-98 (emphasis added).)
*1226 On appeal, Russell challenged the trial court’s imposition of the aggregate twenty-four-year sentence, which he claimed detrimentally affected his DOC classification, as contrary to his plea agreement. However, the Court of Appeals determined that “our resolution of this issue requires us to address a more fundamental issue sua sponte, namely, whether Russell’s 'plea agreement is void and unenforceable as a matter of law.” Russell v. State, 11 N.E.3d 938, 939 (Ind.Ct.App.2014) (foot- ' note omitted).[6] The court turned its attention to Indiana Code § 35-50-l-2(c). As the court recognized and both parties acknowledge, the problem with applying the Section is that Russell’s felony convictions did not arise out of a single episode of criminal conduct.[7] Rather, “the factual basis'for Russell’s guilty plea encompasses the evidence of multiple acts of neglect and confinement that occurred repeatedly over the course of three months. Russell’s crimes do not constitute an episode of criminal conduct. Therefore, the law does not require that Russell’s sentence be limited.” Id. at 941^42 (emphasis added).
Certain that the plea agreement’s ten-year cap and the trial court’s imposition of a ten-year sentence were premised on an erroneous application of Indiana Code § 35-50-l-2(c), the Court of Appeals then analyzed whether Russell’s plea agreement was still enforceable. The court answered in the negative:
Here, the parties attempt to treat the ten-year sentence as severable. But sentencing is a material element of every plea agreement, and we cannot say either that Russell would have pleaded guilty under the plea agreement without the ten-year cap on his sentence or that the State would have agreed to the terms of the plea agreement without its erroneous understanding of Indiana Code Section 35-50-1-2.
Id. at 943 (footnote omitted).
Determining that “the mistaken statutory reference cannot be severed because it was a material element of both the plea agreement and the sentence,” and that neither Russell, the State, nor the trial court would have agreed to or accepted the plea without the erroneous language, the court concluded that the misapplication of Indiana Code § 35-50-l-2(c) was “not harmleás and, therefore, not severable” and lead to the imposition of a sentence that was contrary to law. Id. at 944. As a result, the court' found Russell’s plea agreement void as a matter of law. It reversed his sentence and remanded to the trial court with instructions to give Russell the opportunity to ratify the plea agreement without the erroneous sentencing limitation (allowing the trial court complete discretion in sentencing) within thirty days. If not, Russell’s plea agreement would be vacated.
Russell now petitions this Court for transfer and argues that, among other things, precedent from this Court dictates that his entire plea agreement is enforceable despite the provision that mistakenly caps his sentence. The State agrees that transfer should be granted on this issue and cites many of the same cases in support of its argument that Russell’s total plea agreement should stand. We granted *1227 transfer, thereby vacating the opinion below. Russell v. State, 16 N.E.3d 980 (table) (2014); Ind. Appellate Rule 58(A).
Issue and Standard of Review
The sole issue for our review is whether Russell’s plea agreement, which contains a misstatement of the law in its sentencing provision, is void. “Because this is a matter of law, we review it de novo.” Ghosh v. Indiana State Ethics Com’n, 930 N.E.2d 23, 26 (Ind.2010).
Discussion
Both Russell and the State cite to Lee, 816 N.E.2d 35. In Lee, the defendant successfully challenged an illegal consecutive sentencing provision. Id. at 37. But in declining to sever the sentencing provision from the plea agreement, this Court held that “where a defendant enters a plea of guilty knowingly, intelligently, and voluntarily, there is no compelling reason to set aside the conviction on grounds that the sentence is later determined to be invalid.” Id. at 39. Accordingly, we rejected Lee’s argument that “ ‘[a]s with most plea agreements, the illegal sentencing provision was the material provision of his plea agreement’ and thus cannot be severed from the rest of the agreement, ‘because doing so would eviscerate the contract to the point where the contract ceased to exist altogether.’ ” Id. (citing Appellant’s Reply Br. at 3).
Though the sentencing provision at issue here was mistakenly capped, rather than necessarily illegal, Lee’s directive is clear: where a defendant like Russell knowingly, intelligently, and voluntarily enters a plea agreement, “there is no compelling reason to set aside the conviction on the grounds that the sentence is later determined to be invalid” or to have contained a mistake of law. Id. at 39 (emphasis added). Thus, Lee unequivocally compels Russell’s plea agreement to stand— provided that he knowingly, intelligently, and voluntarily pleaded guilty—as the sentencing consequences of his guilty plea are secondary to the primacy of his plea’s validity.
But our analysis of Lee cannot end here. Importantly, we explained in Lee that it would not be appropriate to sever the illegal sentencing provision from the plea agreement because the defendant benefitted from entering into the plea agreement. “A defendant ‘may not enter a plea agreement calling for an illegal sentence, benefit from that sentence, and then later complain that it was an illegal sentence.’ ” Id. at 40 (quoting Collins v. State, 509 N.E.2d 827, 833 (Ind.1987)). Similarly, here Russell is the beneficiary of a favorable—though mistakenly capped— plea agreement with the State, for had he been sentenced to the maximum term for each count to which- he pleaded guilty, he would have faced a total sentence of fifty-six years. “Our courts have long held that plea agreements are in the nature of contracts entered into between the defendant and the State.” Lee, 816 N.E.2d at 38 (string citation omitted).[8] We construe contracts against the drafting party, “which, in the case of plea agreements, is the State.” Grider v. State, 976 N.E.2d 783, 786 (Ind.Ct.App.2012). Thus, construing Russell’s plea agreement against the State, Russell is entitled to the benefit of the mistake contained within his plea agreement. It is therefore not enough *1228 under Lee that Russell pleaded guilty knowingly, intelligently, and voluntarily: he must also have received the benefit of his plea.[9]
This is all true despite our previous statement that a trial court’s misunderstanding of the law constitutes an abuse of discretion. See Anglemyer v. State, 868 N.E.2d 482, 490-91 (Ind.2007), decision clanfied on reh’g, 875 N.E.2d 218 (Ind.2007). In Angleviyer, we explained that a trial court abuses its discretion if it enters a sentencing statement giving reasons for imposing a sentence that are “improper as a matter of law.” Id. But to be clear, the trial court here did not impose Russell’s sentence for illegal reasons, it merely capped Russell’s sentence after misapplying Indiana Code § 35-50-l-2(c). The latter seems less troublesome for future similarly situated defendants.
Moreover, unlike in Berry v. State, where the trial court impermissibly went outside of the plea agreement in sentencing the defendant, 10 N.E.3d 1243, 1249 (Ind.2014), we think it significant that here the mistake was contained within the plea agreement, for although the reason for the sentencing cap was erroneous, the- limitation was evidence of the parties’ intent to reduce Russell’s exposure in exchange for his agreement to plead guilty to a majority of. the charges. The limitation was contemplated by the parties, and despite the misapplication of the law, there was no danger that the trial court punished Russell outside of the agreement. Similarly, although the trial court mistakenly applied the sentencing cap of Indiana Code § 35-50—1—2(c), its acceptance of the ten-year plea agreement indicated its willingness to accept a deal less than consecutive maximum sentences in order to spare the victims from the ordeal of trial, ensure some amount of imprisonment for Russell, save limited judicial resources, or other valid reasons.
Because Lee requires us to uphold a sentencing provision that misstates the law, provided the defendant pleaded guilty knowingly, intelligently, and voluntarily— as Russell indisputably did, and provided that the defendant benefit from the bargain when the State errs—as Russell unequivocally does, we affirm Russell’s plea agreement, notwithstanding the mistaken application of the statutory cap contained within it.
Conclusion
Accordingly, we affirm the trial court’s acceptance of Russell’s plea agreement, and its imposition of a ten-year sentence, despite the mistaken application of Indiana Code § 35-50-l-2(c). Simply put, Rus-' sell’s plea agreement is valid and enforceable, as explained above. Additionally, we summarily affirm the Court of Appeals’ determination that the trial court imposed an aggregate ten-year sentence. We remand this case for proceedings consistent with this opinion.
DICKSON and RUCKER, JJ., concur.
RUSH, C.J., concurs in result only.
MASSA, J., dissents with separate opinion.

. Ind.Code § 35—46—1 —4(a)(2),(b)(4)(A) and (C) (2008).

. Ind.Code § 35-42-3-3(a), (b)(1)(C) (2008).

.Under oath, Russell affirmed that he had consulted with his attorney about the plea agreement and that he was voluntarily entering in to it.

. Neither neglect of a dependent nor criminal confinement constitutes a "crime of violence" under Indiana Code § 35-50-l-2(a).

. During closing argument, the prosecutor stated, "My regret about this case, Your Hon- or, is the fact that I don’t think the sentencing statute does it justice. The fact that we were limited to asking for ten (10) year maximum in this case. That’s the law we have to follow." (Tr. at 85.)

. .To Russell’s original argument, the court agreed with the State that the sentencing order and abstract of judgment clearly showed that the trial court imposed an aggregate ten-year sentence. We summarily affirm the Court of Appeals in this regard. See Ind. Appellate Rule 58(A)(2).

. " '[Ejpisode of criminal conduct' means offenses or a connected series of offenses that are closely related in time, place, and circumstance.” Ind.Code § 35—50—1—2(b).

. In Lee and other cases we have been careful to acknowledge that "[bjecause important due process rights are involved, contract law principles although helpful are not necessarily determinative in cases involving plea agreements,” though "the principles of contract law can provide guidance in the consideration of the agreement.” Id. (citation omitted). See also Berry v. State, 10 N.E.3d 1243, 1246 (Ind.2014).

. This point also addresses our statement in Lee that "we would not enforce a sentence of death for jay walking simply because the sentence was the product of a plea agreement." Lee, 816 N.E.2d at 38 (quoting Sinn v. State, 609 N.E.2d 434, 436 (Ind.Ct.App.1993)). Implicit in this assertion is our determination that the defendant must get the benefit of his or her deal with the State.