

**FILED**

Aug 07 2015, 10:17 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Stephen T. Owens | Gregory F. Zoeller |
| Public Defender of Indiana | Attorney General of Indiana |
| Deidre R. Eltzroth | J.T. Whitehead |
| Deputy Public Defender | Deputy Attorney General |
| Indianapolis, Indiana | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Willie D. Williams, | August 7, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 35A02-1412-PC-864 |
| v. | Appeal from the Huntington Superior Court |
| State of Indiana, | The Honorable Jeffrey Heffelfinger, Judge |
| *Appellee-Plaintiff.* | Case No. 35D01-1107-PC-14 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Willie D. Williams pled guilty to a Class C felony, a Class D felony, a Class A misdemeanor, and being a habitual substance offender; in exchange, the State dismissed a Class B felony and a Class D felony. Although sentencing was left to the discretion of the trial court, the maximum sentence Williams faced under

the plea agreement was twenty years; in contrast, he faced a maximum sentence of thirty-two years under the original charges. The trial court ultimately sentenced Williams to an aggregate term of sixteen years.

[2] Williams later filed a petition for post-conviction relief alleging that his plea was not knowing, voluntary, and intelligent because defense counsel misadvised him about whether he was actually eligible for the habitual-substance-offender enhancement. But even assuming that Williams was ineligible for the habitual-substance-offender enhancement, because Williams benefited from his plea agreement and the specific facts do not establish an objective reasonable probability that competent representation would have caused him not to enter a plea, we conclude that Williams is not entitled to relief on his claim that his guilty plea was not knowing, voluntary, and intelligent. We therefore affirm the post-conviction court.

# Facts and Procedural History

[3] On September 1, 2009, Williams exited I-69 in Huntington County at the Markle exit. Ex. D (factual basis contained in plea agreement). When Williams failed to stop at a stop sign at US 224, a police officer pulled him over. The officer approached Williams' van and asked for his driver's license and registration; Williams, however, drove off. As Williams continued driving on US 224, he threw a plastic bag containing pills out his van window. Williams eventually stopped his van again. When the officer ordered Williams out of his van, he refused to get out. The officer therefore unlocked the van door through

the window, removed Williams from the van, and handcuffed him. Williams told the officer that he did not have a driver's license. The police found $150 in cash inside Williams' van and 504 pills—including methadone and alprazolam—packaged for sale inside the bag that Williams had thrown out his van window.

[4] The State charged Williams with five counts: Count I: Class B felony dealing in a schedule I, II, or III controlled substance; Count II: Class C felony dealing in a schedule IV controlled substance; Count III: Class D felony possession of a controlled substance; Count IV: Class D felony resisting law enforcement; and Count V: Class A misdemeanor driving while suspended. Ex. A.

[5] In October 2009 the State extended to Williams the following offer: Williams would plead guilty to Counts I, IV, and V; in exchange, the State would dismiss Counts II and III and "not file a habitual substance offender enhancement." Ex. 1. In addition, the State agreed to a sentence of eighteen years with no probation. *Id.* Williams, however, rejected this offer because he believed that the State could not prove Count I: Class B felony dealing in a schedule I, II, or III controlled substance. P-C Tr. p. 18. The matter was set for a jury trial.

[6] Based on Williams' rejection of the offer, in December 2009 the State added a new count alleging that Williams was a habitual substance offender because he had committed two prior unrelated substance offenses. Ex. B. The State amended this count in May 2010 to add a third prior unrelated substance offense. Ex. C. Specifically, the State alleged that Williams was a habitual

substance offender because he had accumulated the following prior unrelated substance offenses:

> 1. Possession of Paraphernalia as a class A misdemeanor, committed on October 29, 2005, conviction entered on October 31, 2005, in the Allen Superior Court under Cause No. 02D04-0510-CM-007929.
>
> 2. Possession of Cocaine as a class C felony, committed on April 4, 1995, conviction entered on October 27, 1995, in the Marion Superior Court under Cause No. 49G02-9504-CF-046076.
>
> 3. Possession of Cocaine as a felony, committed on February 21, 1992, conviction entered on November 15, 1999, in the 16th Judicial District Court, in the Parish of St. Martin, in the State of Louisiana under docket no. 127,610.

*Id.* Williams filed an objection to this amendment, *see* Appellant's App. p. 7 (CCS entry dated May 10, 2010), but the record does not reveal the grounds for the objection.[1]

[7] On May 13, 2010, the day Williams' jury trial was scheduled to start, Williams and the State entered a plea agreement in which Williams pled guilty to Count II: Class C felony dealing in a schedule IV controlled substance, Count IV: Class D felony resisting law enforcement, Count V: Class A misdemeanor driving while suspended, and being a habitual substance offender. Ex. D. In exchange, the State agreed to dismiss Count I (a Class B felony) and Count III (a Class D felony). *Id.* Although sentencing was left to the discretion of the

---

[1] Defense counsel wrote a letter to Williams in June 2010 in which counsel opined that Williams would receive "8 to 12 years" at sentencing but that had he gone to trial, a jury would have convicted him on all counts and he would have faced "well beyond 20 years up to over 30 years." Ex. E. Defense counsel also told Williams that he had "preserved our objection to the amendment on the habitual substance offender." *Id.* But again, the letter does not reveal the grounds for the objection.

trial court, *see id.*, the maximum sentence Williams faced under the plea agreement was twenty years.[2]

[8] At the sentencing hearing, the trial court commented as follows:

> Mr. Williams your record is one of the worst ones that I've seen in quite a while. This makes your ninth and tenth (9th and 10th) felony offenses. By the Probation's count you have a[t] least eleven (11) prior misdemeanor offenses[,] you have three (3) Petitions to Revoke[,] you've committed a Battery offense while you [were] awaiting sentencing for these offenses[,] your record shows that you have at least two (2) prior Batter[ies] and one (1) prior Strangulation.

Ex. G, p. 39. The court sentenced Williams to eight years for Count II, enhanced by eight years for being a habitual substance offender; one and one-half years for Count IV; and one year for Count V. The court ordered the sentences to run concurrently, for an aggregate term of sixteen years.

[9] In July 2011 Williams, pro se, filed a petition for post-conviction relief, which was amended by counsel in February 2014. Specifically, Williams alleged that his guilty plea was not knowing, voluntary, and intelligent and that his trial counsel was ineffective because the three convictions the State used to support his habitual-substance-offender enhancement were improper. At the hearing on his petition for post-conviction relief, Williams testified that he was never advised that he was ineligible for the habitual-substance-offender enhancement

---

[2] Because Williams pled guilty to one crime of violence—Class D felony resisting law enforcement—the consecutive-sentencing limitation in Indiana Code section 35-50-1-2 did not apply. *See Johnson v. State*, 749 N.E.2d 1103, 1110 (Ind. 2001) ("However, the limitations the statute imposes on consecutive sentencing do not apply between crimes of violence and those that are not crimes of violence.").

and that had he known he was ineligible, "I wouldn't have pled guilty. I would have insisted on going to trial." P-C Tr. p. 16. When asked why he would have chosen to go to trial, Williams explained:

> I feel the State couldn't prove intent to deliver a controlled substance without a reasonable doubt. The State could only prove uh, a possession of a controlled substance which is a lesser included offense and knowing that without the habitual I would have insisted on going to trial and asked my attorney to negotiate a better plea bargain.

*Id.*

[10] Following the hearing, the post-conviction court denied relief. *See* Appellant's App. p. 99-104 (post-conviction court's order).

[11] Williams now appeals.

# Discussion and Decision

[12] Williams contends that the post-conviction court erred in denying him relief. In post-conviction proceedings, the petitioner bears the burden of proof by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment, and the standard of review is rigorous. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); *see also Trujillo v. State,* 962 N.E.2d 110, 113 (Ind. 2011). "To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction

court." *Kubsch v. State*, 934 N.E.2d 1138, 1144 (Ind. 2010), *reh'g denied.* Here, the post-conviction court made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted), *reh'g denied.* "The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses." *Woods v. State,* 701 N.E.2d 1208, 1210 (Ind. 1998), *reh'g denied.* Accordingly, we accept the post-conviction court's findings of fact unless they are clearly erroneous, but we do not defer to the post-conviction court's conclusions of law. *Wilson v. State*, 799 N.E.2d 51, 53 (Ind. Ct. App. 2003).

[13] Williams first contends that the three convictions the State used to support his habitual-substance-offender enhancement were improper. Specifically, he alleges that his conviction for possession of paraphernalia does not qualify as a "substance offense" under the habitual-substance-offender statute and that the other two convictions—both for possession of cocaine—"are not in the proper sequence." Appellant's Br. p. 6.

[14] On appeal, the State does *not* challenge Williams' assertion that his two possession-of-cocaine convictions are not in the proper sequence. *See* Ind. Code Ann. § 35-50-2-10 (West 2012) ("After a person has been convicted and sentenced for a substance offense committed after sentencing for a prior unrelated substance offense conviction, the person has accumulated two (2)

prior unrelated substance offense convictions.").[3] Instead, the State argues that Williams' conviction for possession of paraphernalia indeed qualifies as a "substance offense" under the habitual-substance-offender statute, and when that conviction is combined with one of Williams' possession-of-cocaine convictions, "the State had the necessary number of prior convictions, namely two." Appellee's Br. p. 14.

[15] At the time of the offenses, Indiana's habitual-substance-offender statute provided, in part:

> (a) As used in this section:
>
>> (1) "Drug" means a drug or a controlled substance (as defined in IC 35-48-1).
>>
>> (2) *"Substance offense" means a Class A misdemeanor or a felony in which the possession, use, abuse, delivery, transportation, or manufacture of alcohol or drugs is a material element of the crime. The term includes an offense under IC 9-30-5 and an offense under IC 9-11-2 (before its repeal).*
>
> (b) The state may seek to have a person sentenced as a habitual substance offender for any substance offense by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated substance offense convictions.
>
> (c) After a person has been convicted and sentenced for a substance offense committed after sentencing for a prior unrelated substance

---

[3] Indeed, the dates contained in the habitual-substance-offender charging information confirm that Williams' two possession-of-cocaine convictions are not in the proper sequence. That is, Williams committed the possession offense in the Louisiana case in 1992 but was not sentenced until 1999. Williams committed the possession offense in the Indiana case in 1995 and was sentenced that same year. Because Williams was not sentenced in the Louisiana case *before* he committed the possession offense in the Indiana case, the Louisiana conviction cannot be used to support Williams' habitual-substance-offender enhancement.

offense conviction, the person has accumulated two (2) prior unrelated substance offense convictions. . . .

\* \* \* \* \*

(f) The court shall sentence a person found to be a habitual substance offender to an additional fixed term of at least three (3) years but not more than eight (8) years imprisonment, to be added to the term of imprisonment imposed under IC 35-50-2 or IC 35-50-3. . . .

Ind. Code Ann. § 35-50-2-10 (West 2012) (emphasis added). Both parties concede that there are no appellate cases directly addressing whether possession of paraphernalia qualifies as a "substance offense" under the habitual-substance-offender statute. *See* Appellant's Br. p. 7 ("No appellate cases address this issue directly."); Appellee's Br. p. 14 ("Unsurprisingly, although case law on the specific issue is lacking . . . .").[4]

[16] Indiana, however, made significant changes to its criminal code effective July 1, 2014. One of those changes was to repeal the habitual-substance-offender statute effective July 1, 2014. *See* P.L. 158-2013. Now, drug felonies are included under the general habitual-offender statute. *See Peoples v. State*, 929 N.E.2d 750, 751-52 (Ind. 2010) (explaining that in 2001 the legislature limited when drug offenses could be counted under the general habitual-offender statute); *compare* Ind. Code Ann. § 35-50-2-8(b)(3)(C), (d)(3)(C) (West 2012)

---

[4] In *Aslinger v. State*, another panel of this Court noted in a footnote that the defendant's possession-of-paraphernalia conviction "would merit the HSO enhancement." 2 N.E.3d 84, 92 n.4 (Ind. Ct. App. 2014), *clarified on reh'g*, *Aslinger v. State*, No. 35A02-1303-CR-296 (Ind. Ct. App. May 7, 2014), *trans. not sought*. However, the Court did not directly address whether possession of paraphernalia satisfied the statutory definition of "substance offense."

(limiting the number of drug offenses that could be used to support the general habitual-offender enhancement) *with* Ind. Code Ann. § 35-50-2-8 (West 2014 Supp.) (new statute containing no such limits). Accordingly, whether possession of paraphernalia qualifies as a "substance offense" under the now-repealed habitual-substance-offender statute is not a pressing issue in light of the recent changes to our criminal code.

[17] But even assuming that Williams' possession-of-paraphernalia conviction did not qualify as a "substance offense" under the now-repealed habitual-substance-offender statute and therefore Williams did not have two prior unrelated substance-offense convictions, we find that Williams is still not entitled to relief on his claim that his guilty plea was not knowing, voluntary, and intelligent. "The long-standing test for the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Diaz v. State*, 934 N.E.2d 1089, 1094 (Ind. 2010) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)). In furtherance of this objective, the Indiana Code provides that the court accepting the guilty plea must determine that the defendant, among other things: (1) understands the nature of the charges; (2) has been informed that a guilty plea effectively waives several constitutional rights—including trial by jury, confrontation and cross-examination of witnesses, compulsory process, and proof of guilt beyond a reasonable doubt without self-incrimination; and (3) has been informed of the maximum and minimum sentences for the crimes charged. *Id.*; *see also* Ind. Code § 35-35-1-2. In assessing the voluntariness of the plea, we review all the

evidence before the post-conviction court, including testimony given at the post-conviction trial, the transcript of the petitioner's original sentencing, and any plea agreements or other exhibits that are part of the record. *Diaz*, 934 N.E.2d at 1094.

[18] However, a defendant may not enter a plea agreement calling for an illegal sentence, benefit from that sentence, and then later complain that it was an illegal sentence. *Russell v. State*, --- N.E.3d ---, --- (Ind. June 29, 2015); *see also Collins v. State*, 509 N.E.2d 827, 833 (Ind. 1987). This is because defendants who plead guilty to achieve favorable outcomes in the process of bargaining give up a plethora of substantive claims and procedural rights. *Lee v. State*, 816 N.E.2d 35, 40 (Ind. 2004); *Games v. State*, 743 N.E.2d 1132, 1135 (Ind. 2001). Therefore, where a defendant "knowingly, intelligently, and voluntarily enters a plea agreement, there is no compelling reason to set aside the conviction on the grounds that the sentence is later determined to be invalid or to have contained a mistake of law." *Russell*, --- N.E.3d at --- (emphasis and quotation omitted).

[19] Williams asserts that he was "misadvised" about the penal consequences of his plea and "[h]ad he known he was actually ineligible [for the habitual-substance-offender enhancement], he would not have pled to it and would have insisted on trial." Appellant's Br. p. 10. With respect to a claim that a defendant has received incorrect advice as to the penal consequences of a plea:

> *Whether viewed as ineffective assistance of counsel or an involuntary plea*, the post-conviction court must resolve the factual issue of the materiality of the bad advice in the decision to plead, and post-conviction relief may be granted if the plea can be shown to have been influenced by

counsel's error. However, if the post-conviction court finds that the petitioner would have pleaded guilty even if competently advised as to the penal consequences, the error in advice is immaterial to the decision to plead and there is no prejudice.

*Roberts v. State*, 953 N.E.2d 559, 563 (Ind. Ct. App. 2011) (emphasis added) (quoting *Segura v. State*, 749 N.E.2d 496, 504-05 (Ind. 2001)), *trans. denied*. That is, a petitioner must establish, by objective facts, circumstances that support the conclusion that counsel's errors in advice as to penal consequences were material to the decision to plead. *Id.* "'Merely alleging that the petitioner would not have pleaded is insufficient. Rather, specific facts, in addition to the petitioner's conclusory allegation, must establish an objective reasonable probability that competent representation would have caused the petitioner not to enter a plea.'" *Id.* at 563-64 (quoting *Segura*, 749 N.E.2d at 507).

[20] Although Williams said that had he known he was ineligible for the habitual-substance-offender enhancement he would not have pled guilty and would have gone to trial, the objective facts show otherwise. Williams initially faced a Class B felony, a Class C felony, a Class D felony,[5] and a Class A misdemeanor, for a maximum possible sentence of thirty-two years. Williams eventually pled guilty to a Class C felony, a Class D felony, a Class A misdemeanor, and being a habitual substance offender, for a maximum possible sentence of twenty years. In addition, defense counsel, a very experienced

---

[5] Williams was actually charged with two Class D felonies, including Class D felony possession of a controlled substance. However, as the post-conviction court found, the possession and dealing charges would have merged for sentencing. *See* Appellant's App. p. 103 n.1.

criminal lawyer, objected to the State's motion to amend the habitual-substance-offender enhancement and advised Williams that "the jury would have convicted [him] on all counts as charged." Ex. E. Finally, although Williams claimed that the State could not prove Count I: Class B felony dealing in a schedule I, II, or III controlled substance, there is no evidence in the record that this charge was weak. These objective facts do not support the conclusion that Williams' decision to plead guilty was driven by defense counsel's alleged erroneous advice about Williams' eligibility for the habitual-substance-offender enhancement. Accordingly, because Williams benefited from his plea agreement and the specific facts do not establish an objective reasonable probability that competent representation would have caused him not to enter a plea, we conclude that Williams is not entitled to relief on his claim that his guilty plea was not knowing, voluntary, and intelligent.[6]

[21] Affirmed.

May, J., and Mathias, J., concur.

---

[6] Williams also raises this issue under ineffective assistance of counsel. *See* Appellant's Br. p. 11 ("[C]ounsel misadvised Williams regarding his eligibility for [the] habitual substance offender enhancement . . . ."). However, for the same reasons discussed above, Williams' ineffective-assistance-of-counsel claim also fails. *See Segura*, 749 N.E.2d at 504-05 (noting that the test for evaluating an attorney's incorrect advice as to penal consequences is the same "[w]hether viewed as ineffective assistance of counsel or an involuntary plea . . . .").