**FILED**

Mar 10 2016, 9:36 am

CLERK
of the supreme court,
court of appeals and
tax court



| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Dorothy Ferguson<br>Anderson, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana |
| | Richard C. Webster<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tricia A. Davis Williams,<br><br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br><br>*Appellee-Plaintiff.* | March 10, 2016<br><br>Court of Appeals Case No.<br>29A02-1506-CR-528<br><br>Appeal from the Hamilton Superior<br>Court.<br>The Honorable Wayne A. Sturtevant,<br>Judge.<br>Cause No. 29D05-1407-FD-6098 |

**Darden, Senior Judge**

# Statement of the Case

Tricia A. Davis Williams appeals from the trial court's sentencing order after pleading guilty to one count of Class D felony theft,[1] and the State cross-appeals contending that Williams' appeal should be dismissed. We affirm.

# Issues

Because the issue could be dispositive, we address the State's cross-appeal first, which presents the following issue for our review:

> I. Whether Williams' appeal should be dismissed because she waived her right to appeal a discretionary sentencing decision as part of her plea agreement.

Williams presents the following consolidated and restated issue for our review:

> II. Whether the trial court abused its discretion or otherwise imposed an inappropriate sentence given evidence of Williams' true change of behavior and good character.

# Facts and Procedural History

Matthew Huddleston was the owner of H & R Construction Services, LLC, a small business entity, and Williams was the office manager. In May of 2014, Linda Huddleston discovered that Williams had been embezzling money from her son's company. Linda confronted Williams, who admitted that she issued checks to herself without authorization or eligibility for the money. The

---

[1] Ind. Code § 35-43-4-2 (2009).

company books were audited after which it was determined that Williams paid herself on thirty-four separate occasions for commissions, expense reimbursements, and mileage reimbursements from January 1, 2013 to May 2, 2014, totaling $21,721.40. Williams also had falsely claimed overtime on twenty-four separate occasions during that time period in an amount totaling $4,008.88. When interviewed by Detective John Bunch of the Noblesville Police Department, Williams admitted the allegations.

[4] The State charged Williams with one count of Class D felony theft, and later added an allegation that Williams was an habitual offender. Williams and the State entered into a plea agreement whereby Williams would plead guilty to Class D felony theft and the State would dismiss the habitual offender allegation. The trial court took the plea agreement under advisement, set the matter for disposition, and ultimately accepted it.

[5] Williams testified at her sentencing hearing about efforts she had made to improve herself since her arrest. In particular, she sought mental health treatment, counseling, and medication. She had become active in a church and took on-line courses to become a faith-based counselor. She had become a Mary Kay agent and was the primary caregiver for her three and one-half year old son. She also testified that she was in an abusive marriage and that her actions occurred because of the stress and fear resulting from that relationship.

[6] Huddleston testified that he had previously fired Williams after she was caught making unauthorized personal purchases on a business credit card. Later,

Huddleston decided to give Williams a second chance and rehired Williams when she requested to return to the company after getting married and the birth of her child. During the time period leading up to the instant charges against Williams, H & R Construction, LLC, was on the brink of bankruptcy, such that Huddleston had to borrow money to keep the company solvent.

[7] Williams agreed that a fair sentence for her offense would be thirty-six months incarceration in the Department of Correction, but asked the trial court to order that the sentence be executed on home detention. The probation department recommended a three-year sentence to the Department of Correction with two years executed and one year suspended to probation. The State agreed with the probation department's recommendation. After considering the evidence and argument of counsel, the trial court sentenced Williams to three years executed in the Department of Correction.

# Discussion and Decision

## I. Waiver

[8] The State contends that Williams cannot challenge the sentence she received because she waived the right to do so, pursuant to the terms of her plea agreement. "A plea agreement is contractual in nature, binding the defendant, the state, and the trial court, once the judge accepts it." *St. Clair v. State*, 901 N.E.2d 490, 492 (Ind. 2009). Additionally, "a defendant may waive the right to appellate review of his sentence as part of a written plea agreement." *Creech v. State*, 887 N.E.2d 73, 75 (Ind. 2008).

[9]     Resolution of this issue turns on the specific terms of the plea agreement, which the State, Williams, and the trial court signed. Each specific term of that plea agreement was initialed by Williams.

[10]    The terms that are pertinent to this issue provide as follows:

> The minimum and maximum sentence for each crime charged to which he [sic] is pleading is:
>
> Class D Felony: a fixed term of imprisonment of between six (6) months and three (3) years, with an advisory sentence being one and one-half (1 ½) years; in addition, a fine of not more than ten thousand dollars ($10,000.00). Further, the defendant acknowledges that his/her attorney has advised him/her that pursuant to statute, the Court in certain instances may only be able to suspend that part of a sentence in excess of the minimum sentence if the defendant has a prior unrelated felony conviction and that such prior conviction(s) may possibly be used by the Court to increase the possible sentence and/or the possibility of the imposition of consecutive sentences. Further, the defendant acknowledges that his/her attorney has advised him/her that the Court, pursuant to statute, can impose consecutive and/or concurrent sentences pursuant to statute.
>
> That the Defendant's prior felony or misdemeanor convictions may increase the possible sentence or may prevent the Court from suspending all of the sentence;
>
> . . . .
>
> The defendant acknowledges that he [sic] may have a right, pursuant to the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Indiana Constitution to have a jury determine, by proof beyond a reasonable doubt, the existence of any fact or aggravating circumstance that would allow the Court to impose a sentence in excess of the statutory presumptive sentence and to have the State of Indiana provide written notification of any such fact or aggravating circumstance.

The defendant hereby waives such rights and requests that the Judge of this Court make the determination of the existence of any aggravating and/or mitigating circumstances and impose sentence, after considering the presentence investigation report and any appropriate evidence and argument presented at the sentencing hearing.

. . . .

The Defendant understands that he/she has a right to appeal his [sic] sentence if there is an open plea. An open plea is an agreement which leaves the sentence entirely to the Judge's discretion, without any limitations or the dismissal of any charges. The Defendant acknowledges that his [sic] plea is not an open plea and the Defendant hereby waives his [sic] right to appeal his [sic] sentence so long as the Judge sentences the Defendant within the terms of the plea agreement.

Appellant's App. p. 22-23.

[11] The foregoing demonstrates the discretion the plea agreement left in the hands of the trial court with respect to sentencing. The State argues that because Williams agreed that her plea of guilty was not an open plea, she is foreclosed from challenging her sentence on direct appeal. We disagree.

[12] "An 'open' plea is one in which the sentence imposed is left to the discretion of the court." *Allen v. State*, 865 N.E.2d 686, 689 (Ind. 2007). Where "a defendant pleads guilty to what has been characterized as an 'open plea' the freedom and latitude of the trial court to impose a particular sentence is readily apparent." *Childress v. State*, 848 N.E.2d 1073, 1078 (Ind. 2006) (footnote omitted). "Under such circumstances the trial court's discretion is limited only by the Constitution and relevant statutes." *Id.* In an open plea situation, the sentence

must be challenged, if at all, by way of a direct appeal. *Allen*, 865 N.E.2d at 689.

[13] The terms of Williams' plea agreement are in conflict and thus we find the plea agreement to be ambiguous with respect to her right to appeal. First, Williams initialed indicating that she was advised of the statutory maximum, minimum, and advisory sentence for a Class D felony, to which she was pleading guilty and the statutory limitations on the trial court's discretion in imposing the sentence. Secondly, her initials indicate that she was waiving her right to have a jury determine the existence of any aggravating factors and requested the trial court to find any aggravating and mitigating circumstances after considering the presentence investigation report and evidence and argument of counsel at the sentencing hearing. Thirdly, the plea agreement provides that Williams had the right to appeal a sentence imposed on an open plea, but waived her right to appeal the sentence imposed because hers was not an open plea, at least as was defined in the plea agreement ("An open plea is an agreement which leaves the sentence entirely to the Judge's discretion, without any limitations or the dismissal of any charges."). Appellant's App. p. 23.

[14] "We construe contracts against the drafting party, 'which, in the case of plea agreements, is the State.'" *Russell v. State*, 34 N.E.3d 1223, 1227 (Ind. 2015) (quoting *Grider v. State*, 976 N.E.2d 783, 786 (Ind. Ct. App. 2012)). As such, we conclude that this was in fact an open plea, that the parties mistakenly characterized as not being so. Nevertheless, per the terms of the plea agreement, Williams was allowed the opportunity to appeal her sentence from

the open plea and may do so here on direct appeal. This conclusion comports with the trial court's sentencing statement on the record after imposing sentence. ("Since this was an open sentence, I will advise you of your rights to appeal in this matter."). Tr. p. 40. At that point the State did not object to the trial court's comments or correct the record pursuant to the plea agreement. We decline to dismiss Williams' appeal.

## II. Abuse of Discretion

[15] Williams characterizes her claim as, an alleged abuse of discretion in sentencing, by the failure to consider proffered mitigating circumstances and makes a passing reference to our authority to review and revise sentences under Indiana Appellate Rule 7(B). However, Williams argues that the mitigating circumstance of her true change of behavior and good character mitigates against her sentence being served at the Indiana Department of Correction. As a result at the sentencing hearing, Williams specifically requested the trial court "to order her 36 months to the DOC but executed on in-home detention." Tr. p. 32.

[16] "The location where a sentence is to be served is an appropriate focus for application of our review and revise authority." *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008). We will not, however, conduct a review for an abuse of discretion. *Id.* A defendant faces a challenging task of prevailing on a claim that a placement is inappropriate, because appellate review under Appellate Rule 7(B) requires us to consider not whether another sentence is more appropriate, but whether the sentence imposed is inappropriate. *Id.* at 267-68.

[17]     The trial court found the following aggravating circumstances: (1) Williams twice violated a position of trust with the company; (2) she had a history of committing the same type of offense; (3) she was on probation for a similar offense when she committed the instant offense; (4) previous terms of probation were unsuccessful in rehabilitating Williams and deterring her from committing new offenses; (5) psychological services and counseling had not been successful; (6) Williams' previous period of home detention with electronic monitoring did not alter her behavior; (7) her crimes took conscious planning and action; and (8) the impact of Williams' crimes on Huddleston's small business was severe, continuing to steal from him while knowing it was causing him financial difficulty.

[18]     Regarding the mitigating circumstances, the trial court found as follows: (1) Williams pleaded guilty and by doing so saved the State the time and expense of a trial; (2) long term incarceration would impose an undue hardship on Williams' child; (3) she agreed to make restitution in the amount agreed upon in the plea agreement even though Huddleston's losses were greater than that sum; (4) Williams had resumed mental health treatment; and (5) she is employed in a job where she is not responsible for handling money.

[19]     However, as for Williams' acceptance of responsibility for her offenses, the trial court observed and listened to Williams in court, considered the presentence investigation report, and, having done so, could not say that Williams fully accepted responsibility for her crime. Regarding restitution, the trial court questioned Williams' credibility based in part on her statement in the

presence investigation report that it was sometimes acceptable to lie to protect herself and her son, causing the trial court to be skeptical of Williams' statements and plans to make restitution. Ultimately, the trial court found that the aggravating circumstances outweighed the mitigating circumstances, accepted the plea agreement, entered judgment of conviction, ordered restitution, and sentenced Williams to three years executed in the Department of Correction.

[20] In her challenge of the placement of her executed sentence, she asserts that the trial court failed to properly consider her argument that she had a true change of behavior and good character. An assessment of that proffered mitigating circumstance necessarily entails an evaluation of Williams' credibility. It is proper for a trial court to make a determination of credibility during sentencing. *Pickens v. State*, 767 N.E.2d 530, 535 (Ind. 2002). The trial court acknowledged Williams' efforts at rehabilitation, but doubted Williams' credibility. A trial court is not obligated to credit proffered mitigating factors in the same manner as the defendant, nor explain why a proffered mitigating circumstance was not found. *Henderson v. State*, 769 N.E.2d 172, 179 (Ind. 2002).

[21] "When considering the nature of the offense, the advisory sentence is the starting point to determine the appropriateness of a sentence." *Johnson v. State*, 986 N.E.2d 852, 856 (Ind. Ct. App. 2013). "One factor we consider when determining the appropriateness of a deviation from the advisory sentence is whether there is anything more or less egregious about the offense committed by the defendant that makes it different from the 'typical' offense accounted for

by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 806-07 (Ind. Ct. App. 2011).

[22] When reviewing the sentence with respect to the character of the offender, we engage in a broad consideration of a defendant's qualities. *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014), *clarified on other grounds on reh'g*, 11 N.E.3d 571.

[23] Regarding the nature of the offense, initially Williams had violated a position of trust with Huddleston which led to the termination of her first employment. When Williams asked for the opportunity to resume working for Huddleston as office manager, he allowed her to do so, despite her prior theft from his company. Subsequently, she issued checks for which she was ineligible on thirty-four separate occasions for commissions, expense reimbursements, and mileage reimbursements from January 1, 2013 to May 2, 2014, totaling $21,721.40. Williams also had falsely claimed overtime on twenty-four separate occasions during that time period in an amount totaling $4,008.88.

[24] Regarding the character of the offender, Williams had twice violated a position of trust with the small company, had a history of committing the same type of offense, and was on probation for a similar offense when she committed the instant offense. Previous terms of probation were unsuccessful in rehabilitating Williams and deterring her from committing new offenses. Psychological services that were provided to Williams were not successful and counseling had failed. Williams' previous period of home detention with electronic monitoring

did not alter her behavior. Additionally, her crimes took conscious planning and action on her part over a lengthy period of time. She committed these acts while knowing that Huddleston's small company was suffering financially, and that she was the primary caregiver for her young son. Williams has not persuaded us that her placement in the Department of Correction is inappropriate.

## Conclusion

In light of the foregoing, we affirm the trial court's decision.

Affirmed.

Baker, J., and Altice, J., concur.