

I N T H E

# Court of Appeals of Indiana

Charles J. Parker,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Dec 12 2025, 10:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

December 12, 2025

Court of Appeals Case No.
25A-CR-1068

Appeal from the Hendricks Circuit Court

The Honorable Daniel Zielinski, Judge

Trial Court Cause No.
32C01-2310-F1-000020

**Opinion by Judge Felix**
Judges Brown and Scheele concur.

**Felix, Judge.**

## Statement of the Case

For four years, Charles Parker molested K.P., who is both his biological niece and stepdaughter. Parker was charged with and convicted of numerous counts related to this molestation, and the trial court sentenced him to 212 years of incarceration. Parker now appeals and raises one issue for our review: Whether his sentence is inappropriate under Indiana Appellate Rule 7(B).

We affirm.

## Facts and Procedural History

In October 2018, K.P. was 13 years old and lived with her mother and three siblings in Hendricks County, Indiana. Parker is the brother of K.P.'s father, from whom K.P.'s mother had separated. On October 31, then 37-year-old Parker and his two children moved in with K.P.'s family. In November, K.P.'s mother and father divorced. Approximately one year after moving in, Parker married K.P.'s mother.

When living with K.P.'s family, Parker provided alcohol, vape pens, and cigarettes to K.P. And shortly after moving in, Parker began molesting K.P. At various times over the next four years, Parker touched K.P. inappropriately, digitally penetrated K.P., made K.P. perform oral sex on him, performed oral sex on K.P., used a sex toy on K.P., and raped K.P. Parker often forced K.P. to engage in this conduct and would restrain her by holding her hands down. In

September 2023, K.P. disclosed the abuse to a friend, which was later reported to law enforcement.

[5] The State charged Parker with 22 counts: four counts of child molesting as Level 1 felonies,[1] five counts of rape as Level 3 felonies,[2] nine counts of incest as Level 4 felonies,[3] one count of sexual misconduct with a minor as a Level 5 felony,[4] one count of sexual battery as a Level 6 felony,[5] one count of neglect of a dependent as a Level 6 felony,[6] and one count of furnishing alcohol to a minor as a Class B misdemeanor[7]. The jury found Parker guilty as charged. The trial court vacated 9 of the 22 convictions due to double jeopardy concerns. On the remaining 13 convictions, the trial court sentenced Parker to a total of 212 years of incarceration. This appeal ensued.

## Discussion and Decision

### Parker's Sentence Is Not Inappropriate under Appellate Rule 7(B)

[6] Parker argues his sentence is inappropriate under Appellate Rule 7(B) and should be revised. The Indiana Constitution authorizes us to independently

---

[1] Ind. Code § 35-42-4-3(a).

[2] I.C. § 35-42-4-1(a)(1).

[3] I.C. § 35-46-1-3.

[4] I.C. § 35-42-4-9(a).

[5] I.C. § 35-42-4-8(a).

[6] I.C. § 35-46-1-4(a)(1).

[7] I.C. § 7.1-5-7-8(a)(1).

review and revise a trial court's sentencing decision. *Russell v. State*, 234 N.E.3d 829, 855–56 (Ind. 2024) (citing Ind. Const. art. 7, §§ 4, 6; *Jackson v. State*, 145 N.E.3d 783, 784 (Ind. 2020)). That authority is implemented through Appellate Rule 7(B), which permits us to revise a sentence if, "after due consideration of the trial court's decision, [we] find[] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Konkle v. State*, 253 N.E.3d 1068, 1092 (Ind. 2025) (quoting *McCain v. State*, 148 N.E.3d 977, 985 (Ind. 2020)).

[7] Our Supreme Court has explained our role under Appellate Rule 7(B) as follows:

> "[O]ur constitutional authority to review and revise sentences boils down to our collective sense of what is appropriate," *Cramer [v. State]*, 240 N.E.3d [693,] 698 [(Ind. 2024)] (quoting *Taylor v. State*, 86 N.E.3d 157, 165 (Ind. 2017)), an act that, importantly, is reserved for "exceptional" cases, *id.* (citing *Gibson v. State*, 43 N.E.3d 231, 241 (Ind. 2015)). Determining a sentence's appropriateness thus "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *McCain*, 148 N.E.3d at 985.

*Konkle*, 253 N.E.3d at 1092.

[8] Additionally, the defendant bears the burden of proving that "his or her sentence has met the inappropriateness standard of review." *Konkle*, 253 N.E.3d at 1092 (quoting *Cramer*, 240 N.E.3d at 698). And because sentencing "'is principally a discretionary function in which the trial court's judgment

should receive considerable deference,' a trial court's sentencing decision will generally prevail 'unless overcome by compelling evidence portraying in a positive light the nature of the offense . . . and the defendant's character.'" *Id.* (alteration omitted) (quoting *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015)).

[9] In reviewing the defendant's sentence, "we are not limited to the mitigators and aggravators found by the trial court," *Brown v. State*, 10 N.E.3d 1, 4 (Ind. 2014), and we "focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count," *Lane*, 232 N.E.3d at 122 (quoting *Cardwell*, 895 N.E.2d at 1225). Similarly, a defendant "need not 'necessarily *prove*'" that the sentence is inappropriate on both prongs so long as "one of the prongs weighs heavily in favor" of revising the defendant's sentence. *Id.* at 126–27 (emphasis in original) (quoting *Connor v. State*, 58 N.E.3d 215, 219 (Ind. Ct. App. 2016)). Nonetheless, "to the extent the evidence on one prong militates against relief, a claim based on the other prong must be all the stronger to justify relief." *Id.* at 127 (citing *Connor*, 58 N.E.3d at 220).

[10] A trial judge may impose any sentence within the statutory range without regard to the existence of aggravating or mitigating factors. *Anglemyer v. State*, 868 N.E.2d 482, 489 (Ind. 2007), *as amended* (July 10, 2007), *decision clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). When considering the nature of the offense, we start with the advisory sentence. *Brown*, 10 N.E.3d at 4 (citing *Anglemyer*, 868 N.E.2d at 494).

[11]     Here, Parker was convicted of and sentenced on four Level 1 felonies, five Level 3 felonies, one Level 4 felony, two Level 6 felonies, and one Class B misdemeanor. "[A] person who commits a Level 1 felony child molesting offense . . . shall be imprisoned for a fixed term of between twenty (20) and fifty (50) years, with *the advisory sentence being thirty (30) years*." Ind. Code § 35-50-2-4(c) (emphasis added). On each of his four Level 1 felony child molesting convictions, the trial court sentenced Parker to 35 years executed at the DOC. "A person who commits a Level 3 felony . . . shall be imprisoned for a fixed term of between three (3) and sixteen (16) years, with *the advisory sentence being nine (9) years*." *Id.* § 35-50-2-5(b) (emphasis added). On each of his five Level 3 felony convictions, the trial court sentenced Parker to 12 years executed at the DOC. "A person who commits a Level 4 felony shall be imprisoned for a fixed term of between two (2) and twelve (12) years, with *the advisory sentence being six (6) years*." *Id.* § 35-50-2-5.5 (emphasis added). On his one Level 4 felony conviction, the trial court sentenced Parker to 8 years executed at the DOC. "A person who commits a Level 6 felony . . . shall be imprisoned for a fixed term of between six (6) months and two and one-half (2 ½) years, with *the advisory sentence being one (1) year*." *Id.* § 35-50-2-7(b) (emphasis added). On each of his two Level 6 felony convictions, the trial court sentenced Parker to 2 years executed at the DOC. "A person who commits a Class B misdemeanor shall be imprisoned for a fixed term of *not more than one hundred eighty (180) days*." *Id.* § 35-50-3-3 (emphasis added). On his one Class B misdemeanor conviction, the

trial court sentenced Parker to 108 days executed at the DOC.[8]  The trial court ordered all of Parker's sentences to be served consecutively, except for his Class B misdemeanor sentence, which it ordered to be served concurrent to one of the Level 6 felony sentences.  In total, the trial court sentenced Parker to 212 years executed at the DOC.

[12]  Where, as here, the trial court deviated from the advisory sentence, one factor we consider is "whether there is anything more or less egregious about the offense committed by the defendant that makes it different from the 'typical' offense accounted for by the legislature when it set the advisory sentence." *T.A.D.W. v. State*, 51 N.E.3d 1205, 1211 (Ind. Ct. App. 2016) (quoting *Holloway v. State,* 950 N.E.2d 803, 806–07 (Ind. Ct. App. 2011)), *as amended* (May 26, 2023).  We also consider whether the offense was "accompanied by restraint, regard, and lack of brutality."  *Konkle*, 253 N.E.3d at 1093 (quoting *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015)).

[13]  K.P. testified at trial that on at least seven occasions, Parker made her perform oral sex on him in the garage of K.P.'s home; on at least four occasions, Parker digitally penetrated and performed oral sex on her on her family's couch; on more than one occasion, Parker made K.P. perform oral sex on him in K.P.'s bedroom; on at least two occasions, Parker made K.P. have sex with him in his

---

[8] Although not raised by either party, in our review of the record, we note a discrepancy between the trial court's oral sentencing statement (which ordered a 180-day sentence) and the trial court's sentencing orders (which ordered a 108-day sentence) concerning only Parker's Class B misdemeanor sentence.  Because both written sentencing orders provide for a 108-day sentence, we assume the 108-day sentence is correct.

vehicle; and on multiple occasions, Parker made K.P. have sex with him in the bedroom Parker shared with K.P.'s mother. Parker frequently forced K.P. to engage in this activity. For instance, one time when K.P. and Parker were in the garage together, K.P. tried to go inside the residence, but Parker blocked the door, held it shut, and did not allow K.P. to go inside until she "g[a]ve him a blow job." Tr. Vol. II at 218. In a similar incident, Parker went into K.P.'s bedroom and jammed her door with a wooden paddle so no one could come inside, and he would not allow K.P. to leave until she performed oral sex on him. There was another time in Parker's bedroom "when [K.P.] tried to get away and [she] was able to but [Parker] started putting things in front of the door so it would be harder for [her] to get out." *Id.* at 238. Parker also gave K.P. alcohol, cigarettes, and vape pens containing nicotine and THC. Nothing about Parker's offenses demonstrates any modicum of restraint or regard for K.P.

[14] In considering the character of the offender, "we engage in a broad consideration of a defendant's qualities," *T.A.D.W.*, 51 N.E.3d at 1211 (citing *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014), *clarified on other grounds on reh'g*), including whether the defendant has "substantial virtuous traits or persistent examples of good character," *Konkle*, 253 N.E.3d at 1093 (quoting *Stephenson*, 29 N.E.3d at 122).

[15] Although Parker does not have a history of criminal convictions (he was only ever charged with one offense other than the offenses charged in this case), his character is still far from virtuous. For four years Parker molested and raped

K.P. For four years, Parker chose criminality, deceit, force, and self-gratification over correcting and concluding his crimes. Although he was never stopped by law enforcement or other authorities during this time span and then returned to the behavior, his own sense of proper conduct and recognition of community standards should have stopped him from continuing to engage in this conduct. In actuality, he was "caught" one time by his own son. Instead of shame, remorse, and contrition, Parker bribed his own son to stay quiet. Accordingly, Parker's lack of criminal history is a testament to his criminal conduct being kept secret rather than to his being a law-abiding citizen.

[16] To make matters worse, Parker abused his familial and parental positions of trust over K.P.—Parker was both K.P.'s uncle and stepfather, he moved in with K.P.'s family shortly after K.P.'s father separated from her mother and moved to Kentucky, and Parker molested K.P. in her own home. K.P "was really depressed" when her father left, she "saw [Parker] as a father figure, and [she] really missed [her] dad. . . . It hurt [her] because [she] just wanted someone to protect [her] and he didn't protect [her]." Tr. Vol. II at 216. When molesting K.P., Parker "would make comments about [her] body and say that [she] had a perfect body. . . . Or that he liked [K.P.'s] breasts, and he said that [she] was his kryptonite. . . . [K.P.] was his weakness." Id. at 239. In this way, Parker was not only physically abusing K.P., but he was also damaging her emotionally by causing her to believe she shared in the reasons for Parker's behavior. Parker also actively tried to conceal his offenses by locking doors; by

instructing K.P. not to tell her mother; and, in one instance, by paying off his own minor son to keep quiet about seeing Parker perform oral sex on K.P.

[17] Based on the serious nature of Parker's offense and his much-less-than-virtuous character, we cannot say that Parker has produced compelling evidence demonstrating that the nature of his offense or his character renders his sentence inappropriate. *See Wilmsen v. State*, 181 N.E.3d 469, 472–73 (Ind. Ct. App. 2022) (determining 190-year sentence was not inappropriate for defendant convicted of molesting his girlfriend's two daughters for several months); *Vasquez v. State*, 174 N.E.3d 623, 634–35 (Ind. Ct. App. 2021) (determining 288-year sentence was not inappropriate for defendant convicted of nine counts of molesting his girlfriend's daughter and niece). We therefore affirm Parker's sentence.

[18] Affirmed.

Brown, J., and Scheele, J., concur.

ATTORNEY FOR APPELLANT

Lisa D. Manning
Crawfordsville, Indiana

ATTORNEY FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Rebekah D. Bennett
Deputy Attorney General
Indianapolis, Indiana